J. TONY SERRA, SBN 32639
GREGORY M. BENTLEY, SBN 275923
CURTIS L. BRIGGS, SBN 284190
506 BROADWAY
SAN FRANCISCO, CA 94133
TEL: (415) 986-5591
Fax: (415-421-1331
jts@pier5law.com
Bentley.greg@gmail.com
Curt.Briggs@gmail.com

ATTORNEYS FOR DEFENDANT
KWOK CHEUNG CHOW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>   v.<br><br>KWOK CHEUNG CHOW, a/k/a "Raymond Chow", a/k/a "Hai Jai", a/k/a "Shrimpboy".<br><br>Defendant. | No. CR 14-0196 CRB<br><br>SUPPLEMENTAL STATEMENT RE: DISCOVERY |

This supplemental Statement of Discovery is to advise the court of developments bearing on the status of discovery. Since filing of the previous statement (Document 592) defense counsel ran several automated searches on discovery. Various search terms were used based on file properties of the video footage which was referenced by defense counsel as potential drone surveillance. The search revealed six folders[1] in total with a total of twenty separate files

---

[1] File path: \Recordings\US-800002\, subfolders 1D142, 1D230,

RAYMOND CHOW'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER
CR 14-0196 CRB                         1

demonstrating aerial surveillance taking place in Antioch, Daly City, the Bay of San Francisco, and the City of San Francisco. This footage totals approximately twenty hours.[2] Several of the files involved locations which can be traced back to a defendant's home, vehicle, or business. The relation of the remaining files to the present case is currently unknown. The footage appears to come from five different dates ranging from 2012 to 2014. The scope of surveillance is extensive, including residential neighborhoods, freeways, densely populated areas with numerous non-targets present, and even some surveillance taking place in a San Francisco school yard playground while children were present and playing. The curtilage of homes was recorded as well. Most details at ground level are picked up, including peoples hand movements, what was occurring inside a vehicle, physical features, and so on.

    Defense sought advice of a consultant and almost all files were identified as most likely a result of manned aerial surveillance, such as a helicopter. It appears as though the cameras used in each of the videos were not the same giving rise to the inference that more than one aircraft was used at different times. Surveillance aircraft for law enforcement are usually staffed by at least two law enforcement officers, one operates the aircraft and the other operates the camera equipment.

    Defense ran an automated search on "aerial surveillance" on the body of discovery and found only two references total. Both

---

1D239, 1D240, 3.5, 1D262, 1D358 and 1D367.

    [2] Actual files and footage may be more but defense counsel is forced to guess at proper search terms because a useful discovery index has not been provided and the task too arduous to personally verify the existence of the files.

references involved 302s which were turned over regarding physical surveillance which took place in the course of this investigation in New York and Georgia. The New York and Georgia field offices clearly identified aerial surveillance and interwove observations from aerial surveillance into the narratives of the appropriate 302s. Furthermore, the agents who conducted the aerial surveillance were clearly identified (presumably one pilot and one observer). Opposite of here, 302s exist for East Coast aerial surveillance but no videos have been located by defense counsel. This video footage was not addressed in the Government's Statement of Discovery as being something that was turned over or something that they intend to turn over.

Here, there are no references to aerial surveillance by agents anywhere other than identified above; specifically, there is no mention of aerial surveillance by agents in San Francisco or California as a whole.[3] More alarming than originally outlined in defense's previous statement, in our discovery there are no references which correspond to a majority of the dates embedded into the aerial surveillance video footage. It is not apparent what the nature of these activities were. No aerial surveillance footage can be located regarding any of the major co-defendants in this case. This escalates defense concerns about the need to identify the body of discovery immediately because it is necessary for at minimum pretrial motions and so that defense counsel can monitor critical discovery omissions, many of which could be exculpatory.

---

[3] Due to lack of a meaningful discovery index defense is forced to rely on computer software to search the body of discovery based on search terms thought up and input by defense counsel and staff.

RAYMOND CHOW'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER
CR 14-0196 CRB                           3

1     An example of why these are necessary for pretrial motions
2 relates to the Necessity requirement of search warrant applications.
3 At least one of the videos discovered may dramatically refute an FBI
4 agent's sworn representation to the court regarding necessity on one
5 target subject in particular.  The pilot and observer would be
6 witnesses who could impeach the declarant-agent. Furthermore, the
7 suggestion that a form of surveillance along with the accompanying
8 witlessness who conducted the surveillance could be concealed from
9 defense counsel and/or the AUSAs on this case is concerning whether
10 it is intentional or not.  Of course intentional omissions have
11 severe implications. The AUSAs have pledged to give defendants 302s
12 and unless defense counsel is missing something then defendants have
13 not been provided significant information when it matters most on an
14 enormous case like this: pretrial.  Furthermore, it does not reason
15 that the FBI would have used extensive taxpayer resources for manned
16 aerial surveillance on minor co-defendants, but would have conducted
17 no such surveillance on major co-defendants.  Defense counsel
18 believes the AUSAs would not have concealed, and would have complied
19 had they had known, aerial surveillance videos and 302s existed.  Or,
20 they would have notified defense counsel of missing documentation.
21     Since the last Statement of Discovery (Document 592), defendants
22 have contacted the Government in an attempt to informally resolve the
23 issue of identifying the body of discovery and a complete index of
24 what is to be expected.  A dialogue is anticipated and these issues
25 will be resolved through traditional discovery channels.  This
26 supplemental statement serves only to alert the court and to
27 supplement the record as to the potential document dump which has
28

RAYMOND CHOW'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER
CR 14-0196 CRB                           4

occurred.

The issue of mega discovery in multiple co-defendant cases is not a new one. The appropriate handling of discovery in these cases necessitates nationwide reform and the courts and the Department of Justice are making great efforts to ensure Constitutional considerations are being met. However, until such reform is reached, further investigation and prosecution of undercover simulated crime investigations, such as in this case, should be halted in the Northern District pending a process which guarantees organization and indexing of discovery on a proactive and concurrent basis to the investigation so as to avoid a crash collision between the interests of prosecution and Due Process rights of defendants. <u>U.S. v. Chow</u> is not the only case this has occurred recently in the Northern District.[4] Suspending investigations such as these is especially so regarding defendants who are held without bond. A suspension is particularly appropriate because the current procedure improperly shifts budgetary demands to the CJA, courts, and private counsel, when the burden should be borne by the Department of Justice.

/s/ CURTIS L. BRIGGS
    CURTIS L. BRIGGS
    Attorney for Defendant
    KWOK CHEUNG CHOW

---

[4] In <u>U.S. v. Williams</u> the discovery coordinator filed a report addressing many similar issues regarding the discovery process. Williams is being prosecuted by at least one of the same AUSAs as Chow. See <u>Exhibit 1</u>.