1  MELINDA HAAG (CABN 132612)
United States Attorney

2

3  J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

4  WILLIAM FRENTZEN (LABN 24421)
SUSAN BADGER (CABN 124365)

5  S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

6

7       450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

8       Telephone: (415) 436-6959
FAX: (415) 436-6753

9       william.frentzen@usdoj.gov
susan.badger@usdoj.gov

10      waqar.hasib@usdoj.gov

11  Attorneys for United States of America

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14               SAN FRANCISCO DIVISION

15

16  UNITED STATES OF AMERICA,          )    No. CR 14-0196 CRB
                                       )
17          Plaintiff,                 )    UNITED STATES' STATEMENT REGARDING
                                       )    ELECTION OF COUNTS AND DEFENDANTS
18      v.                             )    FOR FIRST TRIAL
                                       )
19  KWOK CHEUNG CHOW, et. al.          )
            Defendants.                )
20                                     )
            Defendant.                 )
21  _____   )

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2   I.      INTRODUCTION ........................................................................................................1

3   II.     ELECTED GROUPING FOR TRIAL ONE ...............................................................1

4   III.    RATIONALE FOR GROUPING ...............................................................................2

5   IV.     CONCLUSION.........................................................................................................13

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3 *United States v. Collins*, 90 F.3d 1420 (9th Cir. 1996).................................................................. 11

4 *United States v. McClelland*, 72 F.3d 717 (9th Cir. 1991) ......................................................... 11

5 *United States v. Rrapi*, 175 F.3d 742 (9th Cir. 1999) ................................................................ 11

6 *United States v. Vizcarra-Martinez*, 66 F.3d 1006 (9th Cir. 1995) .......................................... 11

7 *United States v. Warren*, 25 F.3d 890 (9th Cir. 1994) ............................................................... 11

8

### FEDERAL RULES

9 Fed. R. Evid. 404(b)........................................................................................................................ 11

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

On November 12, 2014, the Court upheld the legitimacy of the Superseding Indictment by denying all motions for severance based on misjoinder under Rule 8(b) of the Federal Rules of Criminal Procedure.  With the ruling that the defendants were all properly joined, the Court turned to the prospect of trial(s) and the fact that all 28 defendants cannot be tried together.  The Court expressed an interest in having a prompt trial of Count Two of the Superseding Indictment – the Senator Yee campaign RICO conspiracy – and those counts and defendants that could be tried in conjunction with Count Two.  The government agrees with that suggestion by the Court.  The Court also requested that the government file a statement regarding its election of the counts and defendants that would make sense to be tried in the first group.  The government hereby files this statement in compliance with the Court's request.

## II.     ELECTED GROUPING FOR TRIAL ONE

The government would elect to try all counts except Count One – the Chee Kung Tong RICO Conspiracy – against the following defendants: Senator Leland Yee, Keith Jackson, Brandon Jackson, Marlon Sullivan, Rinn Roeun, and Barry House.  The Counts tried would be as follows:

- ■      Count 2 (RICO Conspiracy) against defendants Yee and Keith Jackson;
- ■      Count 110 (Narcotics Conspiracy) against defendants Keith Jackson, Brandon Jackson, and Sullivan;
- ■      Counts 152, 165-66 (Dealing Firearms Without a License) against defendants Keith Jackson and Brandon Jackson;
- ■      Counts 158-59, 171 (Dealing Firearms Without a License) against defendants Keith Jackson, Brandon Jackson, and Sullivan;
- ■      Count 174 (Murder for Hire) against defendant Roeun;
- ■      Counts 184, 188, 195, 209 (Dealing Firearms Without a License) against defendant Roeun;
- ■      Count 204 (Murder for Hire) against defendants Keith Jackson, Brandon Jackson, and Sullivan;
- ■      Count 210 (Dealing Firearms Without a License) against defendants Keith Jackson and House;

U.S. STATEMENT RE: TRIAL ONE
CR 14-0196 CRB                          1

1        ■        Counts 211-12 (Felon in Possession of a Firearm) against defendant House;

2        ■        Counts 213-14 (Extortion Conspiracy) against defendants Yee and Keith Jackson;

3        ■        Count 215 (Honest Services Fraud Conspiracy) against defendants Yee and Keith

4                  Jackson;

5        ■        Counts 216-221 (Honest Services Wire Fraud) against defendants Yee and Keith

6                  Jackson;

7        ■        Count 222 (Weapons Conspiracy) against defendants Yee and Keith Jackson.

8    III.    **RATIONALE FOR GROUPING**

9        The proposal by the government would accomplish a number of important objectives in moving

10   the overall case forward:

11       ■        it would be limited to several simple and discrete pieces of the case,

12       ■        it could proceed to trial promptly,

13       ■        it would include charges the evidence for which would be admissible to prove defendant

14                 Keith Jackson's guilt onount Two, even if that were the only charge being tried,

15       ■        it would effectively cover almost all criminal charges against six of the 28 defendants in

16                 the case, rather than having an entire trial and resolving the majority of charges against

17                 only two defendants,

18       ■        it would resolve the majority of the case as to several defendants who are in custody and

19                 have complained of the time the case may take to proceed to trial,

20       ■        there would be no prejudice to any defendant from the evidence presented as to other

21                 defendants,

22       ■        it would involve the same primary government witnesses as a trial of only Count Two

23                 (UCE 4599, UCE 4779, and UCE 4180), and

24       ■        it would involve the same primary type of evidence as a trial of only Count Two (body

25                 wire recordings and wiretap recordings).

26       The over-arching reason why the government proposes to try the defendants and charges listed

27   above in the trial on Count Two is that the evidence regarding the charges is related and intertwined.

28   The starting place in this analysis is the Court's statement that it wishes to proceed with Count Two at

the first trial.  Count Two alleges a RICO conspiracy related to the conduct of the campaigns of Senator Yee to run for Mayor of San Francisco and then for California Secretary of State.  From May 2011 through March 2014, in an effort to collect money for these campaigns and for themselves, defendants Yee and Keith Jackson solicited bribes from undercover employees (UCEs) and confidential human sources (CHSs).  This was not, however, the totality of the criminal activities engaged in by the defendants.  As set forth in Count Two and in the correlated conspiracy and substantive offenses alleged in the Superseding Indictment, Senator Yee and Keith Jackson also engaged in extortion in violation of the Hobbs Act.  Further, Senator Yee and Keith Jackson conspired to deal illegally in weapons from various international sources in exchange for payments of money, including campaign donations.

Obviously, the charges in the Superseding Indictment that allege wire fraud, conspiracy to defraud, extortion, and conspiracy to illegally sell and import weapons that correlate to the RICO activities alleged in Count Two should be tried with Count Two.  There is also an evidentiary relationship between these charges – in particular the weapons conspiracy – and the firearms, narcotics dealing, and murder-for-hire charges alleged in the indictment.  These offenses and events are intertwined to a large degree and provide the essential background to understanding how and why Keith Jackson initiated discussions with UCE-4599 about Senator Yee being in a position to offer assistance in procuring weapons for UCE 4599.  Without that background, the jury cannot properly understand Jackson's criminal intent, Senator Yee's involvement, and the rationale for the arrangement.

The backstory to Keith Jackson's involvement with the UCEs began with Chow introducing Jackson to UCE 4599 in 2011.  In short order following the initial introduction, Jackson solicited illegal campaign contributions for Senator Yee's mayoral campaign from UCE 4599.  UCE 4599 demurred, but introduced Jackson to UCE 4773.  The bribes to Senator Yee flowed from that relationship and were followed by bribes being paid by UCEs 4599 and 4180 to Senator Yee during 2012 and 2013 as Yee got his campaign for California Secretary of State underway.

During the evolution of that politically corrupt relationship, Keith Jackson was not content to sit idly by on other criminal opportunities.  During the time that Senator Yee and Jackson were engaged in criminal activities in furtherance of the honest services conspiracy in late 2011 and into 2012, Jackson continued to develop a relationship with UCE 4599, who held himself out as connected to organized

1    crime on the East Coast and as running a marijuana growing operation in Northern California.  UCE

2    4599 also told Keith Jackson and others that he was interested in purchasing firearms in connection with

3    his marijuana operation, which led to a number of defendants, including Keith Jackson, Brandon

4    Jackson, Marlon Sullivan, Rinn Rouen, and Barry House selling firearms and other items such as

5    ammunition and ballistic vests to UCE 4599.[1]

6          During a meeting with UCE 4599 in August 2012, Jackson informed UCE 4599 that his son,

7    later identified as defendant Brandon Jackson, was involved in shipping marijuana to Tennessee and

8    reaping significant revenue.  Keith Jackson told UCE 4599 that his son was looking for a contact who

9    could get large amounts of prescription medication like Oxycotin or Hydrocodone.  Approximately one

10   month later, Keith Jackson, Brandon Jackson, and Brandon Jackson's partner, Marlon Sullivan, met with

11   UCE 4599 at Harris' Steak House and solicited UCE 4599 to set them up with a source for "hard"

12   narcotics.  Sullivan described to UCE 4599 how he was involved in the trafficking of marijuana,

13   cocaine, and prescription pills and was looking for UCE 4599's assistance in providing a source of

14   cocaine.  UCE 4599 put them off, purportedly until they were ready to handle that type of introduction,

15   but actually because the FBI could not go ahead and start providing narcotics to the defendants for their

16   trafficking operation.  This was the beginning of a cocaine trafficking conspiracy involving Keith

17   Jackson, Brandon Jackson, and Marlon Sullivan which continued up until Brandon Jackson and Marlon

18   Sullivan were arrested on March 26, 2014 on the East Coast after paying $275,000 for a shipment of

19   cocaine for which they were prepared to take delivery.  *See*, S.Indict., Count 110.

20         Concurrent with engaging in this narcotics trafficking conspiracy, Keith Jackson, Brandon

21   Jackson, Sullivan, Rouen, and House became involved in selling firearms to UCE 4599.  From the

22   outset, firearms and narcotics were connected.  At a Chee Kung Tong event on March 29, 2013, UCE

23   4599 met with a number of people, including Brandon Jackson and Sullivan.  Other UCEs were also

24   present.  The UCEs, Jackson, and Sullivan talked about the fact that Jackson and Sullivan were looking

25   to obtain a source of cocaine.  Sullivan said that he had narcotics customers in Boston, Connecticut, and

26

27   _____

      [1] The information described below regarding various meetings, conversations, and criminal
28   activity is not an exhaustive description of all such meetings, conversations, and activities.  It is offered
      as an example to demonstrate the connected-ness between the charges and defendants that the
      government proposes to try together in the first trial.

U.S. STATEMENT RE: TRIAL ONE
CR 14-0196 CRB                                    4

Delaware.  UCE 4599 told the other UCEs that Jackson was working on providing firearms to UCE 4599 and that the payback to Jackson and Sullivan would come in the form of a connection to the UCEs' cocaine supplier.

At a meeting on April 4, 2013 with UCE 4599, Keith Jackson and Brandon Jackson discussed matters both in furtherance of selling firearms to UCE 4599 and a bribe to Senator Yee in exchange for official action.  Brandon Jackson discussed that his source of supply for firearms would have multiple assault rifles and handguns available for purchase.  Keith Jackson and UCE 4599 talked about the recent presentation of the Senate proclamation at the recent Chee Kung Tong dinner and how much money Senator Yee expected from UCE 4599 for the proclamation.

This is just one of a number of occasions when conversations in furtherance of firearms and narcotics trafficking among Keith Jackson, Brandon Jackson, Marlon Sullivan, and UCE 4599 intersected with discussions and acts in furtherance of the honest services conspiracy.  Keith Jackson was deeply involved in all of these activities and was earnestly cultivating the relationship with UCE 4599.  He drew Brandon Jackson and Marlon Sullivan in and stayed involved throughout their narcotics and firearms dealings with UCE 4599.  These defendants eventually drew in defendants Rinn Rouen and Barry House as well.

After discussing narcotics business with UCE 4599, defendants Keith Jackson, Brandon Jackson, and Sullivan agreed to provide firearms to UCE 4599 in exchange for payment.  The first sale took place on May 6, 2013 (*see*, S.Indict., Count 152).  During that transaction, UCE 4599 provided Keith Jackson with a check for $5,000 made payable to "Leland Yee Secretary of State" in payment for the Chee Kung Tong Senate proclamation.  When Keith Jackson, Brandon Jackson, and Sullivan sold firearms to UCE 4599 on June 24, 2013, UCE 4599 told Brandon Jackson and Sullivan that he was going to set up a meeting with them and UCE 4599's source of supply for cocaine and they discussed the price per kilogram of cocaine.  When Keith Jackson, Brandon Jackson, and Sullivan sold ballistic vests and more firearms to UCE 4599 the next day, June 25, 2013, Brandon Jackson and Sullivan told UCE 4599 that they had several more weapons for sale.

Between Keith Jackson, Brandon Jackson, and Sullivan, they sold approximately 30 firearms, in addition to ammunition and ballistic vests, to UCE 4599 between May 6, 2013 and August 26, 2013.  At

least one of the sources for the firearms was defendant Rinn Roeun.  During the meeting for the May 6, 2013 sale of firearms to UCE 4599, Brandon Jackson said that he was having problems procuring weapons from his source of supply and advised that he had another source who was more reliable.  At a meeting between UCE 4599, Keith Jackson, and Brandon Jackson on August 2, 2013, Brandon Jackson talked about the opportunity to buy several weapons from Brandon Jackson's source of supply, identified as "Rinn."  Brandon Jackson told UCE 4599 that he would receive the weapons from Rinn the following Monday.

It was during this same conversation that Keith Jackson first mentioned to UCE 4599 that Senator Yee was associated with an unidentified Russian individual who was an international arms dealer.  According to Jackson, the Russian arms dealer was currently shipping large stockpiles of weapons into a foreign country.  UCE 4599 expressed interest and told Keith Jackson that he would pay Senator Yee and Jackson if they could facilitate a successful arms sale to UCE 4599.  During the same conversation, UCE 4599 and Brandon Jackson continued to discuss UCE 4599's interest in purchasing firearms from Brandon Jackson and UCE 4599 introducing Brandon Jackson to UCE 4599's source of supply for cocaine.

Three days later, on August 5, 2013, UCE 4599 met with Keith Jackson and Brandon Jackson, who sold UCE 4599 more firearms.  See, S.Indict., Count 165.  Brandon Jackson told UCE 4599 that his source had additional firearms for sale.  Keith Jackson told UCE 4599 that he spoke with Senator Yee about introducing UCE 4599 to Yee's associate, the Russian arms dealer.  Jackson stated that in return, Senator Yee requested that UCE 4599 raise an unspecified amount of money for Senator Yee's Secretary of State campaign.  UCE 4599 said he would make a contribution to the campaign in exchange for an initial meeting with the dealer.  UCE 4599 added that he would contribute more money if arms deals were successful.

When Keith Jackson and Brandon Jackson sold more firearms to UCE 4599 on August 8, 2013, (S.Indict., Count 166), Brandon Jackson and UCE 4599 discussed setting up a dinner with Brandon's source of supply, Rinn.  On the other firearms supply front, Keith Jackson told UCE 4599 that he and Senator Yee would be meeting with the Russian arms dealer that evening.  Jackson told UCE 4599 that

1  if he set up a meeting between the Russian and UCE 4599, Jackson wanted $2,000.  He also said that

2  Senator Yee would want a donation after the meeting.

3      Three days later, on August 11, 2013, UCE 4599 met with Keith Jackson, Brandon Jackson, and

4  Sullivan, during which they discussed the sales of firearms, setting up a cocaine transaction, and the

5  Russian arms trafficker.

6      The evidence thus shows that the weapons conspiracy between Keith Jackson, Senator Yee, and

7  ultimately Wilson Lim, naturally evolved out of the firearms and drug conspiracy relationship that had

8  developed between Keith Jackson, Brandon Jackson, and Sullivan.  The facts, motives, and evidence are

9  intertwined and the weapons conspiracy cannot be explained without understanding the context and

10  circumstances out of which it evolved.

11      While defendant Wilson Lim was not the original arms dealer described by Keith Jackson to

12  UCE 4599, the discussions and actions in furtherance of that conspiracy continued through the rest of

13  2013 and into 2014.  When the Russian arms dealer would not meet with UCE 4599, Keith Jackson and

14  Senator Yee came up with Wilson Lim, an alternate source of weapons who had connections in the

15  Philipines.  These discussions and actions continued to intersect with the cocaine conspiracy in which

16  Keith Jackson, Brandon Jackson, and Sullivan were engaging.  For instance, on December 3, 2013, UCE

17  4599 and Keith Jackson met and discussed how much cocaine Brandon Jackson and Sullivan were

18  prepared to purchase (ten kilograms) at what price.  Keith Jackson also reported progress in setting up a

19  meeting between UCE 4599 and the Russian arms dealer.  At a meeting with UCE 4599 on December

20  10, 2013, in the presence of Brandon Jackson and Sullivan, during which they discussed the cocaine

21  transactions, Keith Jackson told UCE 4599 that Senator Yee wanted $5,000 in the form of a campaign

22  contribution for facilitating a meeting between UCE 4599 and the arms dealer.  At another meeting

23  between UCE 4599, Keith Jackson, and Brandon Jackson on December 13, 2013, during which they

24  discussed the cocaine deal, UCE 4599 provided Keith Jackson with $1,000 as incentive for setting up a

25  meeting with the arms dealer.  It was during this meeting that Keith Jackson stated that Senator Yee

26  knew two individuals, one of whom was Wilson Lim, who were potential sources of weapons and who

27  had contacts in the Philippines.  At a meeting with Keith Jackson and Sullivan on December 17, 2013,

28

UCE 4599 provided Keith Jackson with a $5,000 check made payable to Senator Yee's Secretary of State campaign in exchange for setting up a meeting with the Russian arms dealer.

As events moved into 2014, the cocaine conspiracy became even more tied to Keith Jackson's offer to connect UCE 4599 with Senator Yee's source of firearms.  As a meeting with the arms dealer kept being postponed, UCE 4599 informed Keith Jackson and Brandon Jackson that the cocaine deal would be delayed until the meeting with the arms dealer materialized.  Eventually, there were a several meetings between UCE 4599, Keith Jackson, and Senator Yee in which Senator Yee discussed both the Russian arms dealer and Lim.  Senator Yee subsequently introduced UCE 4599 to Lim, UCE 4599 provided Senator Yee and Jackson with a list of the weapons he was seeking to buy, and UCE 4599 paid Senator Yee $6,800 in cash on March 14, 2014.

In the midst of, and connected to, these firearms sales to UCE 4599, the conspiracy to set up a cocaine deal, and the weapons trafficking conspiracy involving Senator Yee, Keith Jackson, Brandon Jackson, and/or Sullivan were involved in other activities:  the murder-for-hire conspiracy charged in Count 204; introducing defendant Rinn Rouen to UCE 4599, which led to Rouen selling weapons to UCE 4599 and engaging in a murder-for-hire plot; and introducing defendant Barry House to UCE 4599, which led to House selling firearms to UCE 4599.

For instance, in the context of the previous firearms sales to UCE 4599, Brandon Jackson introduced defendant Rouen, Brandon's source of supply for firearms, to UCE 4599 on August 27, 2013.  At that meeting, Rouen confirmed that he had supplied weapons to Brandon and discussed the types of firearms he had available to sell to UCE 4599.  When UCE 4599 discussed needing a handgun for personal protection, Rouen initiated a conversation about the services he could provide in that realm, including killing someone for a price.  This conversation, which took place in the presence of and involved Brandon Jackson, forms part of the basis of the murder-for-hire charge against Rouen in Count 174.

Rouen's criminal activity was not limited to offering his services in a murder-for-hire.  After being introduced by Brandon Jackson to UCE 4599 as his firearms source of supply, Rouen sold a total of nine firearms and a silencer UCE 4599 on four occasions from September 13, 2013 through February 26, 2014 (Counts 184, 188, 195, 209).

Further, on top of all firearms sales and narcotics trafficking conspiracy in which Keith Jackson, Brandon Jackson, and Sullivan engaged with UCE 4599, they also participated in their own murder-for-hire conspiracy, as charged in Count 204.  When UCE 4599 and Keith Jackson met on December 3, 2013 (described above), Jackson told UCE 4599 that he had recently met with defendant Barry House. Jackson pointed to his bicep muscle and told UCE 4599 that if ever needed anything from House, to let him (Jackson) know.  UCE 4599 said he wanted one of his associates killed and asked if House could assist.  Jackson said he would talk to House in person; if he did not get House to assist, Jackson would ask Rouen.  When UCE 4599 offered $25,000 for the job, Jackson said that Rouen and his associates had the capabilities to kill people at a cheaper price.

Conversations that developed into a murder-for-hire conspiracy involving Keith Jackson, Brandon Jackson, and Sullivan continued on December 10, 2013 and December 13, 2013, thereby forming the basis of Count 204 of the Superseding Indictment.  Of note, during the December 10 meeting with the three defendants and UCE 4599, and during which they discussed the upcoming cocaine deal, UCE told the defendants that he needed to have one of his associates killed.  Sullivan offered to carry out the murder and asked for information about the intended target.  Sullivan went into detail as to how he would accomplish the task and whom he would have assist him.  UCE 4599 offered $10,000 for the operation and thanked Keith Jackson for arranging the meeting and stressed the importance of keeping it secret.  At the December 13, 2013 meeting with UCE 4599 and Brandon Jackson, Keith Jackson said that he wanted to keep the task "with us."  Brandon Jackson told UCE 4599 that they wanted to gather as much intelligence on the intended target and Sullivan had a contact at California DMV who could supply a photograph.  At a meeting on February 3, 2014 between UCE 4599, Brandon Jackson, and Sullivan, the defendants discussed more details as to how to carry out the murder-for-hire and the cocaine transaction.  Sullivan commented that he was mentally prepared to do ten years in prison.

As noted above, on December 3, 2013, Keith Jackson told UCE 4599 about defendant Barry House's ability to provide muscle.  This was not the first time Jackson mentioned House to UCE 4599. More than a year earlier, in November 2012, Jackson told UCE 4599 that House was a member of the Black Guerilla Family and if UCE 4599 needed security, he should hire House.  In June 2013, UCE

1   4599 asked Jackson if House would be a good source of supply for weapons and Jackson replied by

2   saying that House was more of a street-level supplier.  On February 12, 2014, Keith Jackson invited

3   UCE 4599 to attend a sporting event with House in Oakland.  At the meeting between Jackson, UCE

4   4599, and House, House told UCE 4599 that he was looking to purchase large quantities of marijuana

5   and was tired of dealing with low-level criminals.  When UCE 4599 asked if House had the ability to

6   sell weapons to UCE 4599, House responded that he had a source of supply and could initially provide

7   one assault rifle and one hand gun.  House also told UCE 4599 that he had "two goons" who could

8   provide any type of intimidation or extortion services.  In response to an inquiry by UCE 4599, House

9   assured him that his associates could easily damage the vehicle of one of UCE 4599's associates to send

10   a message.  Jackson continued to be a conduit for the gun transaction that developed between House and

11   UCE 4599.  On March 20, 2014, Jackson provided UCE 4599 with a handgun on behalf of House.  On

12   March 21, 2014, Jackson delivered an assault rifle with a drilled out serial number to UCE 4599 on

13   behalf of House.  Jackson told UCE 4599 that his partner, Pam Gilmore, drove both House and Jackson

14   to Vallejo to pick up the rifle.  (See, S.Indict., Counts 210-212).

15        As this description of just some of the evidence makes clear, the government's proposal to try

16   the counts and defendants listed in Part B, above, together in the first trial is logical and feasible, and is

17   necessary in terms of the way the evidence of the offenses is connected.  The weapons conspiracy

18   referenced in the RICO in Count Two developed directly out of, and cannot be explained without full

19   description of, the firearms and gun trafficking conspiracy between Keith Jackson, Brandon Jackson,

20   and Sullivan.  The murder-for-hire conspiracy between Keith Jackson, Brandon Jackson, and Sullivan

21   cannot be explained outside the context of the narcotics and firearm deals in which they engaged with

22   UCE 4599.  Similarly, all of those activities are connected to and led to the firearms deals with Rouen

23   and House, and the murder-for-hire plot with Rouen.  In fact, Keith Jackson is charged with House in

24   the firearms transactions with UCE 4599.

25        Thus, even if the Court restricted the first trial solely to the RICO in Count Two alone – which

26   would be a huge waste of judicial, governmental, and juror resources – all of these transactions and the

27   resulting relationship would be "inextricably intertwined," and therefore admissible, with the proof of

28   Count Two.  "Evidence of prior bad acts may be admitted 'for the purpose of providing the context in

1   which the charged crime occurred.'  Evidence of other bad acts that is 'inextricably intertwined' with the

2   underlying offense is admissible under Fed. R. Evid. 404(b).  Evidence is 'inextricably intertwined' if it

3   'constitutes a part of the transaction that serves as a basis for the criminal charge,' or 'was necessary to .

4   . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the

5   crime.'"  *United States v. Rrapi*, 175 F.3d 742, 748-49 (9th Cir. 1999) (quoting *United States v. Collins*,

6   90 F.3d 1420, 1428 (9th Cir. 1996); *United States v. Warren*, 25 F.3d 890, 895 (9th Cir. 1994); *United*

7   *States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995)).

8          In addition, if any defendant were to claim entrapment as a defense, then predisposition becomes

9   relevant and all of these transactions clearly demonstrate predisposition.  "If the defendant is found to be

10  predisposed to commit a crime, an entrapment defense is unavailable regardless of the inducement."

11  *United States v. McClelland*, 72 F.3d 717, 722 (9th Cir. 1991).  The predisposition of defendant Keith

12  Jackson will also be relevant to defendant Yee's defense since there is no "indirect entrapment" in the

13  Ninth Circuit.  In other words, defendant Yee cannot defend on the basis that he was induced by

14  defendant Keith Jackson who was working with UCE 4599, since defendant Keith Jackson was

15  obviously never a government agent.

16         Since the conversations that led up to and culminated with the weapons dealing conspiracy

17  portion of Count Two would be admissible to try Count Two, the substantive charges suggested by the

18  government would add very little to the overall evidence that would be admitted at this first trial.  The

19  actual firearms sales are discrete offenses and, as demonstrated above, all of Keith Jackson's discussions

20  to set up and then follow through on the firearms sales are obviously relevant and admissible to the

21  weapons conspiracy.

22         Similarly, the narcotics conspiracy was wrapped inextricably with the weapons dealing

23  conspiracy.  Further, as UCE 4599 pushed to have a meeting with Senator Yee's sources of weapons, he

24  conditioned the conclusion of the narcotics deal on such meetings.  It would actually be impossible to

25  accurately present the weapons deal outside of the context of the narcotics deal.  Since the conversations

26  would be admitted to show the relationship between UCE 4599 and Keith Jackson, the only additional

27  evidence at trial with the addition of the narcotics conspiracy count would be the eventual arrests of

28  Sullivan – who had provided $275,000 in cash for delivery of cocaine and then picked up what he

1 believed was the cocaine in New Jersey – and Brandon Jackson – who was arrested while traveling to

2 the "stash house" that was set up in Connecticut for the cocaine.

3        Defendant House's evidence is wrapped up in the evidence against Keith Jackson as they worked

4 in concert to sell an assault rifle and a pistol to UCE 4599 for $1400 cash.  That was a single transaction

5 provable through several discrete conversations and the delivery of the firearms by defendant Keith

6 Jackson.  Defendant Roeun's evidence is intertwined with that against Keith Jackson, Brandon Jackson,

7 and Sullivan.  Roeun was introduced to UCE 4599 through those other defendants and they discussed

8 that Roeun had been a source for firearms furnished by the other defendants to UCE 4599.  Rouen's are

9 also discrete transactions involving several conversations and then meetings to exchange firearms for

10 money.

11        It is was squarely within the context of these drug and firearms transactions that Keith Jackson

12 offered to assist UCE 4599 with obtaining large quantities of military weapons with the assistance of

13 Senator Yee and others.  What Keith Jackson calls "a fantastical conspiracy" in his pleadings, Def.'s

14 Mot. to Dismiss Firearms Counts, at 6, was not "fantastical" precisely because of the existing

15 relationship.  Undoubtedly, Keith Jackson wants to argue to a jury that the conspiracy was so fantastical

16 that it was never really contemplated: "the government alleges that a state senator, political consultant,

17 and local dentist had the intent and the means to embark on a conspiracy to import a cache of weapons

18 from the Philippines for resale in the United States."  Def.'s Mot. at 6.  The true relationship between

19 Keith Jackson, his co-conspirators, and UCE 4599 will demonstrate to a jury that this scheme was not

20 fantastical, it was actually not even the most abhorrent conspiracy that Keith Jackson engaged in while

21 pursuing money.

22        Finally, the government has heard much complaining by certain defendants that they require

23 severance from Count One because that portion of the case will supposedly take a long time to try.  The

24 government expects that Brandon Jackson, Sullivan, Rouen, and House will have no objection to the

25 proposal that they be tried with Senator Yee and Keith Jackson, as that will ensure a relatively quick

26 trial for them.  While it is unfortunate that Keith Jackson, Brandon Jackson and Sullivan will also have

27 to be tried in a subsequent trial of Count One, the government suspects that resolution of the rest of the

28

1  charges against those three defendants will likely result in a negotiated resolution as to Count One for

2  them.

3  **IV.    CONCLUSION**

4       The goal of judicial economy weighs heavily in favor of trying these additional defendants and

5  counts with Senator Yee and Keith Jackson.  Otherwise, the Court will wind up conducting two or more

6  separate trials that are dominated by the introduction of very similar, if not identical, evidence.  For the

7  reasons stated, the government respectfully submits this is the proper grouping for the first trial, and

8  elects to try this group of defendants and counts in the first trial.

9

10  Dated: November 19, 2014             MELINDA HAAG
                       United States Attorney

11

12                     By:       _____/s/_____

13                         WILLIAM FRENTZEN
                       SUSAN BADGER

14                         S. WAQAR HASIB
                       Assistant United States Attorneys

15

16

17

18

19

20

21

22

23

24

25

26

27

28