MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
SUSAN BADGER (CABN 124365)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6959
    FAX: (415) 436-6753
    william.frentzen@usdoj.gov
    susan.badger@usdoj.gov
    waqar.hasib@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 14-0196 CRB |
| Plaintiff, | UNITED STATES' RESPONSE TO COURT ORDER |
| v. | |
| KWOK CHEUNG CHOW, a/k/a "Raymond Chow", a/k/a "Hai Jai", a/k/a "Shrimpboy", et. al. | SAN FRANCISCO VENUE |
| Defendants. | |

**INTRODUCTION**

Defendant CHOW filed a Motion to Dismiss for Selective Prosecution and attached numerous exhibits, including lengthy excerpts from sealed wiretap affidavits. The government moved *ex parte* for a temporary sealing order so that the Court could examine the filings and determine whether or not they should remain under seal. The Court issued an order directing the government to specify how the

UNITED STATES' RESPONSE TO COURT ORDER
CR 14-0196 CRB                                                                        1

materials contained in the defendant's motion violate the Protective Order in this case, and whether 18 U.S.C. § 2518(8)(b) applies to this matter. The government hereby responds to that Order.

### A. The Defendant's Filings Violate this Court's Protective Order

This Court issued a protective order in this case (Docket No. 302, herein "Protective Order"), governing the disclosure of discovery materials to the defendants. Paragraph 15 of the Order allows defendants to use protected materials "in judicial proceedings in this action, including in any trial or pretrial matters before the Court, using appropriate procedures to protect the safety and security of third parties when necessary." Paragraph 15 also requires that any protected materials "that reveal the images or the true identities of any federal undercover agents or confidential human sources shall be filed under seal." Protective Order, para. 15.

CHOW's motion plainly runs afoul of Paragraph 15. Disclosure of individuals involved in this case and investigation haphazardly is inherently a risk to their safety and security. This is no idle claim. During the course of the instant investigation, defendant CHOW has frequently threatened to eliminate his rivals and anyone perceived to be a threat to him. Many of those threats – by CHOW and by other co-conspirators with CHOW who are awaiting trial on November 2, 2015 – were described in the Affidavit of Special Agent Emmanuel Pascua in support of the Criminal Complaint. Only a few are summarized below:

- On March 19, 2011, defendant Chow described the placing of a figure outside of a restaurant to send a message of intimidation to other groups. Affidavit of SA Pascua at 31.

- On April 13, 2011, defendant Chow described that he had nothing to prove as a tough guy anymore, but that if anything happened to him, the person who did it would pay a tremendous price and their life would disappear. *Id.*

- On May 6, 2011, defendant Nieh stated that if they thought someone was a rat they would kill them or chop off their tail. *Id.*

- On September 22, 2011, defendant Nieh described defendant Chow as a member of the Triad, an international criminal organization. *Id.*

- On October 19, 2011, defendant Chow stated that the last time someone posed a threat to Chow, Chow "dropped him." *Id.* at 32.

- On November 17, 2011, defondant Chow described that he had removed his protection from a rival and that the rival could now be killed. *Id.* That individual, that Chow removed his protection from, was later murdered in a homicide that is currently unsolved.

CR 14-0196 CRB                                                                 2

- On January 25, 2012, defendant Chow described that he was not involved in any criminal activity but that he had some pretty rough people in the city if he needed them. Defendant Li described that he had returned to the Bay Area from Los Angeles to handle a problem with defendant Chow's rival and to "get rid of the bugs." *Id.* at 33.

- On February 16, 2012, defendant Chow discussed his influence over Tong members from other locations, including New York. *Id.*

- On March 16, 2012, defendant Chanthavong told UCE 4599 that if UCE 4599 ever needed anything, Chanthavong would have his "guys take care of it." Chanthavong described that he had five guys as a "Black Operations Team" that were loyal to Chanthavong only, and that Chanthavong was loyal to defendant Chow. *Id.* at 33-34.

- On April 20, 2012, defendant Chow stated that if he ever got "hit," there would be a lot of people to avenge his death. *Id.* at 34.

- On January 10, 2013, defendant Pau discussed Triad membership and ranks for different defendants including Chow and Pau. Defendant Pau discussed how defendant Chow took over the Chee Kung Tong ("CKT") when Allen Leung was murdered. *Id.* at 37.

- On March 29, 2013, defendant Chanthavong stated that defendant Li was the new head of enforcement for the CKT and that defendant Chanthavong was the head of security. Defendant Li discussed prior acts of violence. Defendant Chanthavong told UCE 4599 that if he ever needed someone taken care of, that defendant Chanthavong had "niggas that can take you out from 500-1000 yards." *Id.* at 38.

- On April 17, 2013, defendant Chow stated that there were a lot of smaller criminal crews in the Bay Area, that Chow was not the leader of the small crews but when Chow "calls them out" they all come out to support Chow. Chow said "if anyone fucks with me, they are done for." *Id.*

- On July 18, 2013, defendant Pau again discussed roles within the CKT. He agreed that defendant Li was a soldier and made the shape of a gun with his hand and described him with the Triad number of "426" – signifying a soldier. Defendant Pau said that he would be responsible for making the call on a hit and defendant Li would be responsible for carrying it out. *Id.* at 38-39.

- On September 13, 2013, defendant Li described wanting to "smash" people who spread rumors about a fight between defendant Chow and defendant Li. *Id.* at 71.

As an example of the danger posed by defendant's Motion, CHOW directly revealed the identity of an individual who wore a bodywire and recorded a meeting with CHOW. Def. Mot. pg. 13, Exhibit 2H and 2I. That particular encounter stemmed directly from a perceived threat from CHOW. It is difficult to decipher from CHOW's largely unintelligible motion why he thought it was necessary to

UNITED STATES' RESPONSE TO COURT ORDER
CR 14-0196 CRB                                3

reveal this person's identity in spite of this Court's protective order. As best as the government can tell, CHOW believes that he is being prosecuted because the individual who wore the bodywire and others are colluding with the United States Attorney to "rid Chinatown of any alternate voices, including CHOW." Def. Mot. at pg. 5. This outlandish conspiracy theory, which even CHOW admits lacks any evidentiary support[1], and has no conceivable logical relationship to selective prosecution law or theories, is no reason to risk the safety and security of someone who cooperated with law enforcement against an organization that is alleged to have engaged in, among other things, murder-for-hire, drug trafficking, money laundering, and weapons trafficking. Def. Mot. pg. 5. More importantly for purposes of the Court's order, though, CHOW apparently overlooked the lengthy and detailed explanations in the very documents that he excerpted that discuss safety and security issues posed both to the individual and to other third parties. Def. Mot. Exhibit 4, bearing government Bates No. 607985, et. seq.

CHOW's motion also indirectly provides information that could lead to revealing true identities of other confidential human sources. For example, CHOW attaches to his motion excerpts from a sealed wiretap affidavit discussing "Confidential Human Source #11." Def. Mot. Exhibit 2C. The excerpt explains that the source was able to obtain a copy of a recording of CHOW; the excerpt further identifies the date the recording was made, the individuals who were present when it was made, and the circumstances under which it was made. *See also* Def. Mot. Exhibit 4, bearing government Bates No. US 608009. Such information could easily be pieced together by CHOW's associates to identify sources and take retaliation against those individuals for cooperating with law enforcement.

CHOW also upends the procedures that this Court specifically set forth in Paragraph 1 of the Protective Order to resolve disputes regarding disclosure of protected materials. Specifically, Paragraph 1 states that any defendant who contests the applicability of the Protective Order to particular materials "must initially meet and confer with the government to resolve the dispute if possible." No meet and confer took place on this issue; indeed, the government had no notice whatsoever that CHOW would be

---

[1] CHOW concedes in his motion that evidence supporting the alleged collusion by the United States Attorney "has yet to be established" and is based entirely on unspecified "appearances." Def. Mot. pg. 5, lines 15-17. In any event, it is worth noting that in July and August of 2009, at the time the individual described above allegedly wore a bodywire, the United States Attorney was not Melinda Haag, whom CHOW alleges is part of the political "in crowd" colluding against him; it was Joseph Russoniello.

UNITED STATES' RESPONSE TO COURT ORDER
CR 14-0196 CRB                                              4

filing protected materials.  Paragraph 1 further requires that "[i]f after meeting and conferring with the government the defendant disagrees with the government's determination as to the characterization of the material(s), the defendant's next avenue for resolution is to notify the Court and seek a judicial determination of whether the specific materials at issue should be designated as SUBJECT MATERIALS and continue to be subject to the terms of this Protective Order."  The government is unaware of any attempt by CHOW to pursue this "next avenue" of notifying the Court.  Instead, it appears that CHOW simply unilaterally decided to disclose protected materials, even going so far as to redact the "PROTECTED MATERIALS" stamps from his filed exhibits (in some cases only partially: *see, e.g*. Def. Mot Exhibit bearing government Bates number US 608011).

CHOW's motion defies the letter and spirit of the Protective Order, as set forth by this Court in its Order Granting Motion for a Protective Order (Docket No. 301-1).  In that Order, this Court explained that

> The protective order negotiated between the government and all of the other defendants in this case is not only practical, it is lawful… [D]isclosure risks not only bodily harm to undercover agents, but reputational harm to individuals who would be collateral damage.  In the case of public officials, there is also a risk of unfairly undermining their abilities to govern. An investigation of government corruption conducted by means of wiretap will include speculative discussions about numerous public officials, when those individuals are not parties to the discussions, cannot interject to defend themselves, and never went on to act in a corrupt or criminal manner.

CHOW's motion plainly ignores this Court's reasoning, and as a result, the risks the Court described may have needlessly been realized.

CHOW could have taken numerous steps to mitigate these risks.  He could have consulted with the government before filing his motion, as required by Paragraph 1 of the Protective Order; he could have taken the "next avenue" of alerting the Court that he wanted to disclose protected materials; he could have used "appropriate procedures" such as redactions to "protect the safety and security of third parties" before filing protected materiasl publicly, as required by Paragraph 15 of the Protective Order; or he could have filed them under seal.  CHOW took none of those steps; instead, he filed a largely unintelligible and potentially frivolous motion, apparently more to attract media attention than to

advance his criminal case.[2]  If in fact CHOW provided protected information to the press directly, then that would obviously violate the Protective Order.

Finally, for reasons that will be fully described in an opposition to CHOW's motion to dismiss, the motion was clearly a Trojan horse filed not with the belief that it might actually be granted, but only as a vehicle to create a media splash.  If the protected materials were disclosed by CHOW for that purpose, then he clearly violated paragraph 15 of the Protective Order.

### B. The Defendant's Filings Violate 18 U.S.C. § 2518(8)(b)

This Court directed the government to address whether 18 U.S.C. § 2518(8)(b) applies to this matter.  It does.  Section 2518(8)(b) governs the sealing and subsequent disclosure of wiretap applications and orders.  It requires all such applications and orders to be sealed by the issuing judge, and to be disclosed "only upon a showing of good cause before a judge of competent jurisdiction."  All of the wiretap applications and orders in this case were sealed after they were issued, in accordance with Section 2518(8)(b).  The government has not unsealed these materials, other than for limited purposes, such as to provide them to the defendants through discovery and in anticipation of suppression motions. CHOW in his motion nonetheless attaches broad excerpts from these sealed materials in his motion, having never shown good cause, or indeed any cause, for why they should be disclosed publicly.  The government notes that all other parties in this proceeding have meticulously abided by the restrictions of Section 2518(8)(b), including several defendants who filed suppression motions.  Indeed, the Court is currently considering whether to unseal limited portions of those suppression motions and the Court's ruling on those motions; specifically at issue are the several sealed wiretap applications and orders that were submitted as exhibits to those motions, which the government has argued should remain under seal pursuant to 18 U.S.C. § 2518(8)(b), absent a showing of good cause.  *See*, United States' Memorandum Regarding Proposed Redactions To The Order Denying Motions to Suppress, Doc. 874, *citing In the Matter of the Application of the New York Times Company to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 408 (2d. Cir. 2009)(referring to a previous Second Circuit case holding: "In

---

[2] The government has information, for instance, that a draft of CHOW's motion containing highlights and marks for editing, and different from the final version of the motion filed with this Court was provided to at least one news media organization which then posted the draft on its website.  *See Declaration of FBI Special Agent Ethan A. Quinn* attached as Exhibit 1.

UNITED STATES' RESPONSE TO COURT ORDER
CR 14-0196 CRB                                         6

that case (citation omitted), we concluded that the structure and purpose of Title III – including the provision governing disclosure of wiretap applications – revealed a manifest congressional intent that wiretap applications be treated confidentially and clearly negated a presumption in favor of disclosure."). CHOW in his motion apparently has usurped this Court's power to rule on that issue, unilaterally disclosing excerpts from wiretap applications without any authorization from the Court or a showing of cause, much less good cause.

### C. The Defendant's Filings May Violate the Local Rules

CHOW's filings, in particular his inclusion of excerpts from sealed wiretap applications, may run afoul of the Local Rules regarding sealed material. *See* Criminal Local Rule 56-1. The government will provide further briefing on this issue if so instructed by the Court.

DATED: August 6, 2015

Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/
WILLIAM FRENTZEN
SUSAN BADGER
S. WAQAR HASIB
Assistant United States Attorneys