BRIAN J. STRETCH (CABN 163973)
Acting United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
SUSAN E. BADGER (CABN 124365)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    William.frentzen@usdoj.gov
    Susan.badger@usdoj.gov
    Waqar.hasib@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.:  CR 14-0196 CRB |
| v. | UNITED STATES' REPLY REGARDING REBUTTAL WITNESS |
| KWOK CHEUNG CHOW, et al. | Court:   Honorable Charles R. Breyer |
| Defendants. | |

1    Defendant Chow opposes calling a witness from BI to introduce records related to defendant Chow's

2  ankle monitor.  Defendant Chow makes the following argument: (1) that he provided notice of an alibi

3  defense, and (2) that defendant Chow did not testify about his ankle monitor and his curfew so no

4  rebuttal is appropriate.  Defendant Chow is wrong on both points.  For those reasons, the government is

5  offering a proper rebuttal witness.  No continuance is necessary since the defense has had the underlying

6  records and been in communication with the company that monitored defendant Chow for over a month

7  and should be prepared to deal with the records.  At the end of the day, additional time and additional

8  witnesses would not change the facts of the monitoring of defendant Chow in any event.

9    Defendant Chow did not offer an alibi defense.  The notice that he points out in his Opposition,

10  Def.'s Opp. at 3, was irrelevant under the proper function of Fed. R. Crim. P. 12.1.  First of all, Chow's

11  notice was deficient on its face: "we wanted to put you on notice that we may use an alibi defense;

12  specifically as to whether [Mr. C]how was present at the time and location of the alleged solicitation of

13  the murder of Kong and the aiding and abetting of the Lleung [sic]."  To begin with, the government has

14  no idea what that means.  Furthermore, even if the quoted "notice" were an intelligible sentence, it

15  would be of no effect as an alibi notice.  That is because Rule 12.1 is triggered by a **government**

16  **demand for alibi notice**, Fed. R. Crim. P. 12.1(a)(1), not by a defendant sending out half of an alibi

17  notice.  Rule 12.1 provides:

18      An attorney for the government may request in writing that the defendant
       notify an attorney for the government of any intended alibi defense.  The
19      defendant's notice must state: (A) each specific place where the defendant
       claims to have been at the time of the alleged offense; and (B) the name,
20      address, and telephone number of each alibi witness on whom the
       defendant intends to rely.

21
22  If the defendant provides its notice, that would trigger notice requirements on the part of the

23  government.  The government made no Rule 12.1 demand of defendant Chow, and his partial notice

24  was, therefore, unsolicited.  As a result, it did not put the government on notice of anything and did not

25  trigger any reciprocal responsibilities on the part of the government.

26    Furthermore, as noted above, the Rule requires far more specific notice from a defendant to claim

27  alibi.  Fed. R. Crim. P. 12.1(a)(1).  Defendant Chow provided no notice of where he claimed to be on

28  any particular date or time, and he specified no alibi witnesses that he could rely on.  As a result, there

USA MOT. RE: REBUTTAL WITNESS
CR 14-0196 CRB                                    1

1   was no actual notice of any alibi pursuant to Fed. R. Crim. P. 12.1.  And again, defendant Chow's

2   misguided effort to notify the government of an alibi did not indicate what he had an alibi for, other than

3   "the aiding and abetting of the Lleung [sic]."

4       Defendant Chow also makes the false claim that the issue of his location did not arise during "direct

5   or cross examination of Chow . . . ."  Def.'s Opp. at 4.  That is belied by the transcript.  Tr. at 4367-

6   4375.  Defendant Chow did raise the issue of his ankle bracelet and his curfew during his case, making

7   this appropriate rebuttal evidence.  During Mr. Serra's examination of defendant Chow, Mr. Serra asked

8   if defendant were required to wear an ankle bracelet.  Tr. 4367.  Defendant Chow correctly admitted –

9   consistent with the testimony of William Wu, Tr. 422 – that originally his ankle monitor was cut off

10  prior to him going into ICE custody during March of 2005.  Tr. 4367-68.  That testimony corroborates

11  Thau Benh Cam that defendant Chow was not being monitored and would not have had a curfew on the

12  night of March 11, 2005, when defendant Chow instructed Mr. Cam to shoot the Hop Sing Tong

13  building.  The examination by Mr. Serra continued, however, and Mr. Serra asked Mr. Chow what his

14  curfew was when he was re-released in November of 2005.  Tr. 4369, 4373.  Defendant Chow stated

15  that his curfew was from 10:00 p.m. to 8:00 a.m.  Tr. 4373.  Defendant Chow also testified to the

16  following on direct: "Q. While you were wearing the ankle bracelet, did you violate your curfew on any

17  occasion?  A. No.  No.  I always on time. . . ."  That is contradicted by the BI records as well.

18      Therefore, the government sought to call a proper rebuttal witness from BI – precisely as defendant

19  Chow attempted to do through two other custodians, but apparently could not find one that was qualified

20  – to clarify that the curfew changed during the relevant time period.  To a certain extent, this is

21  potentially helpful to defendant Chow since for some of the relevant time period his curfew was actually

22  from 6:00 p.m. to 8:00 a.m.  However, importantly, the monitoring by BI demonstrated frequent

23  "alerts."  Most were very brief, but there were several during the relevant time period that lasted for

24  periods of hours and there were nights where the defendant missed his curfew.

25      What should not occur is that the defendant be permitted to make arguments to the jury that his

26  counsel knows are false.  As both the government and defense counsel know, it cannot credibly be

27  argued that defendant Chow could not have met with cooperators Joe Chanthavong and Thau Benh Cam

28  in Oakland.  Joe Chanthavong testified during trial that he met with defendant Chow on a date prior to

1   the murder of Allen Leung, and received instructions about killing Leung, at approximately 7:00 p.m. in

2   the evening.  He was questioned on cross-examination about a prior statement to FBI during which he

3   had reported that the meeting may have occurred later.  Neither the current testimony by defendant

4   Chow nor the offered records would refute Mr. Chanthavong's testimony.  In order to move this along,

5   the government has offered numerous times to stipulate to these records when the defendant offered

6   them – so long as the stipulation explained the records including the "alerts."

7       Defendant Chow argues that he would need to call surrebuttal witnesses from ICE and/or the

8   Probation Office.  First of all, the Probation Officer was no longer supervising Chow.  Chow's

9   supervised release expired while he was in ICE custody.  Therefore, when Judge Jensen ordered

10  defendant Chow released in November of 2005, he was solely being monitored by ICE – through the

11  device implemented by BI – and not by the U.S. Probation Office.  So defendant Chow's Probation

12  Officer – former U.S. Probation Officer Mark Messner – would have nothing to say about this situation.

13  As to ICE, the fact that defendant Chow was not reincarcerated is not relevant to whether or not his

14  ankle monitor was often outside the prescribed range.  The decision by ICE about what to do about

15  "alerts" would not change that defendant Chow's ankle bracelet was not within the range permitted on a

16  number of nights.

17      The government persists in its request to call the custodian from BI and asserts that there is no basis

18  to continue the trial for this brief witness predicated on records that the defendant has had for over a

19  month.  In the alternative, the government seeks for a bar on any inappropriate arguments – contrary to

20  the evidence in the possession of defendant Chow – that his "curfew" would have necessarily prevented

21  him from meeting with the cooperators.

22

23  DATED: January 3, 2016                    Respectfully submitted,

24                                            BRIAN J. STRETCH
                                              Acting United States Attorney

25

26  _____/s/_____
                                              SUSAN E. BADGER

27                                            WILLIAM FRENTZEN
                                              S. WAQAR HASIB

28                                            Assistant United States Attorneys