**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 15 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> KWOK CHEUNG CHOW, AKA Shrimp Boy, AKA Raymond Chow, AKA Ha Jai, <br><br> Defendant-Appellant. | No. 16-10348 <br><br> D.C. No. 3:14-cr-00196-CRB-1 <br><br> MEMORANDUM* |
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> KWOK CHEUNG CHOW, AKA Raymond Chow, AKA Ha Jai, AKA Shrimp Boy, <br><br> Defendant-Appellant. | No. 17-10246 <br><br> D.C. No. 3:14-cr-00196-CRB-1 |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted April 19, 2019
San Francisco, California

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  BEA and N.R. SMITH, Circuit Judges, and MÁRQUEZ,[**] District Judge.

Defendant Kwok Cheung Chow—also known as "Raymond Chow" or "Shrimp Boy" (hereinafter "Chow")—was found guilty of racketeering, murder in aid of racketeering, conspiracy to commit murder in aid of racketeering, money laundering, and conspiracy to sell stolen liquor and cigarettes across state lines.  For these crimes, Chow was sentenced to life in prison.  Because the parties are familiar with the facts of this case, we recite them only as necessary to explain our decision.  Chow raises four distinct challenges on appeal, we take each in turn.

I.

Chow argues that the district court erred by withholding the identities of two undercover FBI agents who testified against him at trial.  "The decision to deny disclosure of an informant's identity is reviewed for abuse of discretion." *United States v. Gil*, 58 F.3d 1414, 1421 (9th Cir. 1995).

In this case, the undercover FBI agents' identities are classified, and the government has put forward evidence (which we reviewed in camera) strongly suggesting that disclosure of the agents' identities would threaten their safety.  Balancing this concern against Chow's interest in discovering the agents' identities,

---

[**] The Honorable Rosemary Márquez, United States District Judge for the District of Arizona, sitting by designation.

2

we hold that the district court did not abuse its discretion by ordering the agents' identities withheld.

Chow also argues that the district court erred by partially closing the courtroom during the undercover agents' testimony. The Sixth Amendment provides that in a criminal prosecution, the accused shall enjoy a public trial. U.S. Const. amend. VI. But the right to a public trial "is not absolute," *United States v. Yazzie*, 743 F.3d 1278, 1286 (9th Cir. 2014), and a judge may order a partial courtroom closure if: (1) there is a substantial reason for the partial closure, and (2) the closure is "narrowly tailored to exclude spectators only to the extent necessary to satisfy the purpose for which it was ordered." *United States v. Sherlock*, 962 F.2d 1349, 1357 (9th Cir. 1989). The government had a substantial reason for preventing public disclosure of the undercover agents' identities (discussed above), and the district court's partial courtroom closure during their testimony was narrowly tailored to serve that substantial interest, while preserving the public's right of access to the trial by viewing a live video of the agents' testimony (with their faces obscured) from another room. Chow's Sixth Amendment right to a public trial was not violated.

II.

Chow next argues that the district court erred by not granting him a new trial due to the government's improper use of his prior statements against him at trial.

3

Because Chow did not object to the admission of these statements, we review for plain error. *United States v. Larsen*, 596 F.2d 347, 348 (9th Cir. 1979) (per curiam).

Pursuant to a plea agreement in a prior criminal case, Chow admitted that he was involved in ordering several murders. The government promised not to use these statements against Chow, so long as he testified truthfully at all future proceedings and trials. But in this case, Chow chose to take the stand and testify falsely that he had never participated in any murders. This was a breach of the plea agreement, which allowed the government to impeach Chow with his prior statements regarding his involvement in murders. We refuse to adopt an interpretation of Chow's plea agreement that would allow him to testify falsely at his criminal trial without fear of impeachment. *Cf. Harris v. New York*, 401 U.S. 222, 225 (1971). Chow argues that even if he *did* breach the plea agreement, his breach should be excused because the government breached first by questioning him about prior murders (which elicited his false testimony). Not so. The government did not use any of Chow's prior statements against him until *after* he testified falsely that he had never ordered any murders. Chow's counsel opened the door to the government's general questions about prior murders by representing that Chow had never ordered anyone's murder during his opening statement, and by questioning Chow on direct examination about his not having participated in any prior murders

4

while living in Hong Kong. The district court did not err in denying Chow's request for a new trial on this ground.

III.

After Chow's conviction at trial, but before his sentencing, Chow's attorneys moved to withdraw, citing "irreconcilable differences" with Chow. Chow argues that the district court erred by not discharging attorneys Serra and Smith at that time. Smith was appointed to represent Chow under the Criminal Justice Act (CJA). 18 U.S.C. § 3006A(c). Chow was therefore entitled to discharge him only if he could show a complete breakdown in their communication. *United States v. Rivera-Corona*, 618 F.3d 976, 979 (9th Cir. 2010). The district court determined that no such breakdown had occurred, and properly refused to discharge Smith. Serra, on the other hand, was representing Chow on a retained pro bono basis. "[T]he Sixth Amendment right to counsel of choice means that a defendant has a right to fire his retained . . . lawyer . . . for any reason or [for] no reason." *United States v. Brown*, 785 F.3d 1337, 1344 (9th Cir.2015) (internal quotations and emphasis omitted). But "[t]he right to retained counsel of one's choice is not absolute." *Rivera-Corona*, 618 F.3d at 979. District courts still have "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (internal citations omitted). In this case, the district court was concerned about the inefficiency and

5

delay that would be caused by discharging Serra when reply briefs on pending post-trial motions, and a sentencing memorandum, were due shortly. The district court did not abuse its discretion by refusing to discharge Serra until the reply briefs and sentencing memorandum were filed. In any case, any error in not allowing Chow to discharge Serra for a temporary period between June 16 and July 19 was harmless. *See United States v. Maness,* 566 F.3d 894, 896 (9th Cir 2009) (per curiam).

Chow argues that the district court further erred when—after the district court eventually allowed Chow to replace Serra and Smith with new counsel—the court did not allow Chow's new counsel to file a second motion for a new trial arguing ineffective assistance of counsel ("IAC"). But IAC claims are "generally inappropriate on direct appeal" or in post-trial motions, and "should be raised instead in habeas corpus proceedings." *United States v. Steele*, 733 F.3d 894, 897 (9th Cir. 2013). Whether to address an IAC claim in a post-trial motion is entirely within the district court's discretion. *Id*. at 898. Addressing Chow's IAC claims during the post-trial stage in this case would have required significant prolongment of the post-trial process to develop the factual record surrounding the claims. Given these concerns, the district court did not abuse its discretion in not allowing Chow to file a replacement new trial motion.

IV.

Chow finally argues that the district court erred in ordering him to forfeit $225,000 in property pursuant to two criminal forfeiture statutes, 18 U.S.C. § 1963 and 18 U.S.C. § 982(a)(1). This sum represents "the total amount of the proceeds obtained by the conspiracy as a whole," not just the amount that Chow personally received by virtue of his involvement in the conspiracy.

In *United States v. Newman*, we held that "[f]or purposes of criminal forfeiture . . . . the 'proceeds' of [the defendant's] crime equal the total amount of the [proceeds] obtained by the conspiracy as a whole." 659 F.3d 1235, 1244 (9th Cir. 2011). But in 2017, the Supreme Court decided *Honeycutt v. United States*, which held that joint and several liability was incompatible with at least one commonly-used criminal forfeiture statute, 21 U.S.C. § 853. 137 S. Ct. 1626 (2017). *Honeycutt* therefore abrogated *Newman*'s holding about the *general* propriety of applying joint and several liability to criminal forfeiture statutes—after *Honeycutt*, courts must look to the specific provisions of the forfeiture statute at issue to determine if joint and several liability applies. *Id.*

We have not yet addressed whether *Honeycutt*'s reasoning extends to the criminal forfeiture statutes at issue in this case. Because the Supreme Court decided *Honeycutt* just one day before the district court filed its final order of forfeiture, and because *Honeycutt* was not brought to the court's attention by either party in a Statement of Recent Decision, the district court did not consider *Honeycutt*. We

7

therefore reverse and remand for the district court to consider the impact of *Honeycutt* on the forfeiture amount in this case in the first instance.

**AFFIRMED in part; REVERSED AND REMANDED in part.**